**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAYMOND VINOLE, on behalf of
himself and all others similarly
situated; KEN YODER,
        *Plaintiffs-Appellants,*

v.

COUNTRYWIDE HOME LOANS, INC., a
New York corporation,
        *Defendant-Appellee.*

No. 08-55223

D.C. No.
CV-07-00127-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
February 5, 2009—Pasadena, California

Filed July 7, 2009

Before: Barry G. Silverman and Consuelo M. Callahan,
Circuit Judges, and Richard Mills,* Senior District Judge.

Opinion by Judge Callahan

---

*The Honorable Richard Mills, Senior United States District Judge for
the Central District of Illinois, sitting by designation.

8299

## COUNSEL

Michael D. Singer, Cohelan, Khoury & Singer, on behalf of appellants Raymond Vinole and Ken Yoder.

Thomas R. Kaufman, Seyfarth Shaw LLP, on behalf of appellee Countrywide Home Loans, Inc.

## OPINION

CALLAHAN, Circuit Judge:

Plaintiffs-Appellants Raymond Vinole and Ken Yoder ("Plaintiffs") appeal the district court's order granting Defendant-Appellee Countrywide Home Loans, Inc.'s ("Countrywide") motion to deny class certification. In this wage-and-hour dispute, Plaintiffs seek to represent a proposed class of current and former Countrywide employees who are or were employed as External Home Loan Consultants ("HLCs"). They allege that Countrywide mis-classified HLCs as "exempt" outside sales employees and, as a result, Countrywide impermissibly failed to pay premium overtime and other wages. In a procedural wrinkle, Countrywide filed its motion to deny certification before Plaintiffs filed a motion for certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and prior to the pretrial motion deadline and discovery cutoff.

On appeal, we consider whether the district court abused its discretion by (1) considering Countrywide's motion to deny class certification before Plaintiffs had filed a motion to certify and prior to the pretrial and discovery cutoffs, and (2) denying class certification based on its reasoning that individual issues predominate over common issues. *See* Fed. R. Civ. P. 23(b)(3). We affirm. First, no rule or decisional authority prohibited Countrywide from filing its motion to deny certification before Plaintiffs filed their motion to certify, and Plaintiffs had ample time to prepare and present their certification argument. Second, the district court did not abuse its discretion by denying certification under Rule 23(b)(3) because the record supports its conclusion that individual issues predominate over common issues.

# I

Countrywide is a corporation that provides mortgages to homeowners and home purchasers. It employs roughly 1,140 HLCs, like Plaintiffs Vinole and Yoder, in small satellite offices throughout California to sell loan products on its behalf. HLCs are focused on outside sales and "represent Countrywide in local communities, and specifically work with realtors, builders, and other potential business partners in order to develop business relationships and obtain referral business." They are paid entirely on commission, based on loan production.[1] Countrywide declares that it "has no control over what HLCs actually do during the day" and does not monitor how HLCs perform their work activities. It further states that "[i]t is immaterial how much, or how little time HLCs spend in the office, or working overall" and that "[i]t is up to each HLC to decide how much time they want to spend doing this, how they want to market themselves, and how much money they want to make." HLCs can earn several hundreds of thousands of dollars, and the average annual compensation of Countrywide's HLCs during the relevant period was over $100,000.

Countrywide applies a uniform wage exemption to HLCs, categorizing them as "exempt" outside salespeople to whom Countrywide is not obligated to pay overtime and related wages. It relies on the "outside salesperson" exemption found in the California Industrial Wage Commission's ("I.W.C.") Wage Order 4-2001, § 1(C), *codified at* Cal. Code Regs., tit. 8, § 11040, and a similar exemption in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(1). I.W.C. Wage Order 4-2001, § 2(M) defines an outside salesperson as a person "who customarily and regularly works more than half the

---

[1]Countrywide also employs Internal Home Loan Consultants, who perform inside loan origination work based on phone calls and walk-ins. Countrywide classifies these employees as non-exempt workers who are paid on an hourly basis.

working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities."

Evidence in the record, in the form of declarations from HLCs regarding the amount of time individual HLCs spent inside and outside the office, suggests that the time spent in or out of the office varies greatly. Countrywide does not keep records reflecting whether any particular HLC qualifies for the exemption and does not monitor any possible change in an HLC's exemption eligibility—it apparently only tracks the number and value of loans that HLCs close each month.

In October 2006, Plaintiffs filed a complaint in California state court, which Countrywide removed to federal court in January 2007. The First Amended Class Action Complaint ("Complaint") alleges twelve causes of action against Countrywide on the theory that Countrywide impermissibly classified all HLCs as exempt despite the fact that most HLCs primarily engaged in non-exempt activities inside the office.[2] Plaintiffs seek to represent a putative class defined as follows:

> All current and former California-based employees having a title of Loan Consultant and/or other similarly designated titles, who have worked for Defendant COUNTRYWIDE HOME LOANS, INC. within the last four (4) years from the filing of the Complaint up to and including the time of trial for this matter ("Loan Consultants")[.]

The Complaint also proposes eight sub-classes within the larger class.

---

[2]Plaintiffs allege claims for restitution of overtime wages, failure to pay overtime wages, failure to pay minimum wages, failure to provide meal periods, failure to provide rest periods, illegal record keeping, unfair business practices, conversion, and declaratory relief. They seek back pay with interest, declaratory relief, injunctive relief, punitive damages, penalties, and attorneys' fees.

On August 7, 2007, before the discovery cutoff and pretrial motion cutoff, Countrywide filed a motion to deny certification. The discovery cutoff was scheduled for November 9, 2007, and the pretrial motion cutoff was scheduled for December 3, 2007. Plaintiffs had not yet filed an affirmative motion for class certification. Plaintiffs opposed the motion, arguing that (1) the motion was "not 'ripe' " and was procedurally improper because Plaintiffs had yet to file a motion for class certification; and (2) class certification was substantively warranted based on the evidence they presented, which included nine declarations from HLCs that served as a "preview" of the motion for class certification that Plaintiffs' intended to file.

On November 15, 2007, the district court granted Countrywide's motion. First, the district court held that it was permitted to decide the question of certification on Countrywide's motion under Rule 23 notwithstanding the fact that Countrywide had filed its motion before the pretrial motion and discovery cutoff dates. Second, the district court held that class certification was not substantively proper because Plaintiffs had not met their burden to demonstrate the applicability of one of the Rule 23(b) certification grounds. Specifically, it concluded that individual issues predominated over common issues because determining the propriety of a HLC's exempt status would require an individualized analysis of how each HLC spent his or her time, and that Countrywide had "no common scheme or policy that would diminish the need for individual inquiry." (Order at 5, Nov. 15, 2007.)

After entry of the district court's order, Plaintiffs successfully petitioned this court for permission to file an interlocutory appeal pursuant to Federal Rule of Civil Procedure 23(f).[3]

---

[3]We ordered that this case be calendered with *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, No. 08-15355, also decided today, because the cases involve similar issues as to the certification of a class of loan consultants.

## II

We review a district court's order denying class certification for an abuse of discretion. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). As we stated in *Parra v. Bashas', Inc.*,

> [w]e limit our review to whether the district court correctly selected and applied Rule 23's criteria. An abuse of discretion occurs when the district court, in making a discretionary ruling, relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them.

536 F.3d 975, 977-78 (9th Cir. 2008) (citation and internal quotation marks omitted).

## III

## A

**[1]** We first address Plaintiffs' argument that a defense motion to deny class certification "brought outside the context of a plaintiff's motion *actually seeking* certification is procedurally improper *per se*." Although we have not previously addressed this argument directly, we conclude that Rule 23 does not preclude a defendant from bringing a "preemptive" motion to deny certification.

**[2]** Rule 23(c)(1)(A) addresses the timing of a district court's class certification determination, and states: "*Time to Issue*: At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to

put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question. The only requirement is that the certification question be resolved "[a]t an early practicable time." The plain language of Rule 23(c)(1)(A) alone defeats Plaintiffs' argument that there is some sort of "*per se* rule" that precludes defense motions to deny certification, and Plaintiffs have produced no authority to the contrary.

[3] In addition, contrary to Plaintiffs' assertion that the district court here charted "troubling new territory" by entertaining Countrywide's motion to deny certification, federal courts have repeatedly considered defendants' motions to deny class certification. In *Rutledge v. Electric Hose & Rubber Co.*, we affirmed the district court's order granting defendants' motion to deny certification under Rule 23, albeit without expressly addressing any challenge to the defendants' ability to bring such a motion before plaintiffs moved for certification. 511 F.2d 668, 673 (9th Cir. 1975). In *Cook County College Teachers Union, Local 1600 v. Byrd*, the Seventh Circuit also concluded that it was proper for the district court to consider the defendants' motions to deny certification where the plaintiffs had not yet moved to certify a class. *See* 456 F.2d 882, 884-85 (7th Cir. 1972) ("One opposing a class action may move for an order determining that the action may not be maintained as a class suit."), *cert. denied*, 409 U.S. 848 (1972); *see also Parker v. Time Warner Entm't. Co.*, 331 F.3d 13, 21-22 (2d Cir. 2003) (reviewing a district court's order granting defendant's motion to deny class certification but vacating that order because the district court had not permitted plaintiffs to conduct limited discovery).

Plaintiffs' proposed rule is also contrary to the fact that district courts throughout the nation have considered defendants' "preemptive" motions to deny certification. *See*, *e.g.*, *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (stating that "defendant's Motion for Denial of Class Certification—a procedural 'preemptive strike'

against this purported class action—is properly before this court"); *Chevron USA, Inc. v. Vermillion Parish Sch. Bd.*, 215 F.R.D. 511, 515-16 (W.D. La. 2003) (granting defendants' motion to deny class certification), *aff'd*, 377 F.3d 459, 464 (5th Cir. 2004); *Bryant v. Food-Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) (denying on the merits defendant's motion to deny class certification brought before start of discovery); *Osborn v. Pennsylvania-Delaware Serv. Station Dealers Ass'n*, 499 F. Supp. 553, 560 (D. Del. 1980) ("Plaintiff's briefing appears to incorrectly assume that defendants to purported class actions may only raise issues regarding the appropriateness of this procedure in response to class certification motions."); *Brown v. Milwaukee Spring Co.*, 82 F.R.D. 103, 104 (E.D. Wis. 1979) ("While the plaintiff has the burden of establishing her right to maintain a class action, the defendants may test the propriety of the action by means of a motion for denial of class certification.").[4]

Plaintiffs rely on three district court cases for their purported "*per se* rule" prohibiting defendants from moving to deny class certification prior to the plaintiffs' filing of a motion to certify: *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609 (N.D. Cal. 2007); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 WL 2462150 (N.D. Cal. Aug. 27, 2007) (unpublished); and *Beau-*

---

[4]Several secondary sources also recognize that either plaintiffs or defendants may put class certification at issue and that defendants may move to deny class certification before plaintiffs file a motion to certify a class. *See*, *e.g.*, James Wm. Moore, 5 MOORE'S FED. PRACTICE, § 23.82[1] (Matthew Bender 3d ed. 2009) ("The defendant need not wait for the plaintiff to act, however. The defendant may move for an order denying class certification."); William B. Rubenstein, Alba Conte & Herbert B. Newberg, 3 NEWBERG ON CLASS ACTIONS, § 7:6 (4th ed. June 2009) ("Not infrequently, however, the defendants may initially move for an order denying the class."); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7AA FED. PRAC. & PROC. CIV. 3D, § 1785 (2008) ("Either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1).").

*perthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) (unpublished). These cases do not support Plaintiffs' proposed rule.

In *In re Wal-Mart Stores*, the district court did not have before it a Rule 23 motion to deny class certification—instead, and unlike the present case, the district court was considering the defendant's motions to dismiss and strike class allegations pursuant to Federal Rule of Civil Procedure 12, when the defendant had not yet answered the complaint, discovery had not yet commenced, and no motion to certify a class had been filed. *See* 505 F. Supp. 2d at 614-16. The district court exercised its discretion and denied the motions in order to allow plaintiffs time to conduct discovery prior to considering the propriety of the class allegations. *Id.* at 615-16. However, it in no way set forth an absolute prohibition on defense motions to deny certification.[5]

Plaintiffs' reliance on *Baas* is similarly unfounded because that case involved a defendant's motions to dismiss and strike class allegations on vagueness grounds and was decided in nearly the same procedural posture as *In re Wal-Mart Stores*. *See Baas*, 2007 WL 2462150 at *2-3 (distinguishing a Rule 23 motion and holding that defendant's attempt to dismiss class allegations under Rule 12 was premature). As in *In re Wal-Mart Stores*, *Baas* did not adopt the *per se* rule urged by Plaintiffs here.

Finally, the Plaintiffs misread *Beauperthuy* as supporting a *per se* prohibition on preemptive motions to deny class certification. In that case, the district court denied defendants' motion under Rule 23(d)(4) to compel amendment of the pleadings to eliminate class allegations on the grounds that such a motion was "procedurally inseparable" from the ques-

---

[5]In our case, during the hearing on Countrywide's motion to deny certification, the district court specifically recognized the Countrywide's motion was brought pursuant to Rule 23, not Rule 12(b).

tion of class certification, and that the plaintiffs had not yet filed a motion to certify. *Beauperthuy*, 2006 WL 3422198, at *3. The district court held only that it was procedurally improper to consider a motion to compel an amendment of the pleadings in a class action case where the question of certification was not yet before the court and discovery was ongoing. *Id.* Again, the district court did not announce the rule forwarded by Plaintiffs here.

**[4]** In short, Plaintiffs have read into Rule 23 a *per se* prohibition against defendants filing of a motion to deny class certification where none exists. A defendant may move to deny class certification before a plaintiff files a motion to certify a class. Accordingly, the district court did not err by considering Countrywide's motion.

**B**

Having determined that Countrywide filed its motion to deny class certification at a permissible point in the proceedings, we next consider whether the district court abused its discretion in granting Countrywide's motion before the pretrial motion cutoff and the discovery cutoff. The district court held that (1) it was not obligated to wait for the pretrial motion deadline before considering the class certification issue, and (2) Plaintiffs had "sufficient time to prepare for Defendant's motion" despite the fact that the discovery cutoff was three weeks away. Plaintiffs argue that the district court's consideration of the motion was "fundamentally unfair" because they were deprived of the opportunity to present their argument based on a full record.

**[5]** Plaintiffs offer virtually no factual assertions in support of their claim that the district court abused its discretion by considering Countrywide's motion to deny certification before the December 3, 2007 pretrial motion deadline. They essentially argue that it was unfair for the district court to consider Countrywide's motion when it did. However, the opera-

tive scheduling order simply states that "[a]ll other pretrial motions must be filed on or before December 3, 2007." As the district court noted in its order, "the scheduling order neither provides Plaintiffs an exclusive right nor a specifically designated period of time to address the issue of class certification." (Order at 3.) In addition, Plaintiffs have not offered any authority, and we have found none, for the proposition that a district court either abuses its discretion or errs as a matter of law by considering the issue of class certification before expiration of a pretrial motion deadline. Plaintiffs' argument is essentially a re-packaged version of their argument that plaintiffs are entitled to complete control over the timing of a district court's consideration of the class certification issue, an argument which we have already rejected.

**[6]** We also conclude that Plaintiffs were provided with adequate time in which to conduct discovery related to the question of class certification such that the district court did not abuse its discretion by considering Countrywide's motion. District courts have broad discretion to control the class certification process, and "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *accord Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001). Although a party seeking class certification is not always entitled to discovery on the class certification issue, we have stated that "[t]he propriety of a class action cannot be determined in some cases without discovery," *Kamm*, 509 F.2d at 210, and that "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (holding, however, that class certification was properly denied without discovery where plaintiffs could not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures were "likely to produce persuasive information substantiating the class action allegations"); *accord Mantolete v. Bolger*, 767

F.2d 1416, 1424-25 (9th Cir. 1985). Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.[6]

Here, however, considerably more information was available to the district court when it ruled on the motion to deny certification than just the pleadings. Although the district court considered Countrywide's motion roughly three weeks before the November 2007 discovery cutoff, Plaintiffs had nearly ten months to conduct informal and formal discovery between the time Plaintiffs filed their original class action complaint and their opposition to Countrywide's motion. Tellingly, Plaintiffs' counsel and Judge Sabraw had the following exchange at the hearing on Countrywide's motion to deny class certification:

> **[Counsel]:** The complaint was filed October 20th, 2006.
>
> **The Court:** Okay. So tomorrow will be one year.
>
> **[Counsel]:** Yes.
>
> **The Court:** And here there has been — it has been in the federal court for . . . about 10 months. And . . . discovery closes in two or three weeks?

---

[6]The Eleventh Circuit recently stated that "the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 & n.14 (11th Cir. 2008); *see also In Re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) ("The court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues.") (citation and quotation marks omitted).

> **[Counsel]:** Right. We are — I would say, your honor, that we are anticipating being able to file a Rule 23 motion within about four weeks.
>
> **The Court:** What more discovery would you do?
>
> **[Counsel]:** We are not going to conduct any more discovery in terms of obtaining information from the defense or taking depositions and so forth, but we are compiling additional declarations from putative class members.
>
> As I mentioned in the briefing, we provided a preview of those declarations, because we didn't want to be on defendants' schedule forced into putting forth our Rule 23 motion in opposition to a procedurally improper motion to deny class certification.

**[7]** Several things are apparent from this colloquy. First, at the time of the hearing Plaintiffs had conducted significant discovery and did not intend to propound any additional discovery seeking information from Countrywide regarding the propriety of class certification. Second, it is evident that Plaintiffs had made a strategic choice to limit the amount of evidence it presented to the district court in opposition to Countrywide's motion; they proffered their class certification arguments through their "preview" declarations. Third, Plaintiffs' real complaint is not that they were deprived of adequate time in which to complete discovery, but that they "didn't want to be on defendants' schedule." But, again, this is just a variation on Plaintiffs argument in favor of a *per se* rule. Plaintiffs, in a strategic gamble, relied on their position that Countrywide's motion was procedurally improper—an argument we have rejected—to avoid having the district court decide the motion on the merits. Nothing in the record suggests that Plaintiffs could not have more diligently prepared their certification argument in the months between the date

Countrywide filed its motion and the date Plaintiffs' opposition brief was due.

Moreover, the record indicates that Plaintiffs did not request a continuance or an extension of time in which to respond to Countrywide's motion. If Plaintiffs truly were not prepared to present their position on class certification, it seems reasonable that they would have requested an extension or continuance as soon as possible after Countrywide filed its motion to deny class certification.[7]

[8] We have decided that Countrywide could properly file its motion to deny class certification before the close of discovery and before the pretrial motion deadline. Accordingly, the district court's consideration of the motion would only be improper if Plaintiffs could show some procedural prejudice from the timing of the consideration. Plaintiffs have failed to do so on the record presented, and, thus, the district court did not abuse its discretion.

## IV

Next, we review the merits of the district court's denial of class certification for an abuse of discretion. *Zinser*, 253 F.3d at 1186. Plaintiffs' claim that the district abused its discretion by not certifying a class in accordance with *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005), which certified a Rule 23(b)(3) class on the basis of an employer's uniform classification of a group of its employees as exempt.

---

[7]Plaintiffs argue that they asked the district court to "belay its ruling on the motion to deny certification until [they] brought their substantive motion," which Plaintiffs contend was essentially a request for a continuance. Plaintiffs have not cited to evidence in the record substantiating any such formal request, and the district court's docket does not reflect as much.

**A**

Under Rule 23(b)(3), a class may be certified if the district court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[8] Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[9] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation and quotation marks omitted). Rule 23(b)(3)'s predominance and superiority requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment). Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether "adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (citation and quotation marks omitted).

Keeping the requirements and purpose of Rule 23(b)(3) in mind, our assessment of whether the district court abused its discretion also implicates the analytical framework within which courts review application of an exemption to an employee. Here, the district court held that analysis of the outside salesperson exemption precluded certification because that analysis would require an individualized inquiry into the

---

[8]On appeal, the parties do not dispute whether Plaintiffs have satisfied the requirements of Rule 23(a), which is a prerequisite to class certification. *See Parra*, 536 F.3d at 978.

[9]The party seeking certification bears the burden of demonstrating that he has met the requirements of Rule 23(b). *Zinser*, 253 F.3d at 1186.

manner in which each HLC actually carried out his or her work, and that this burden was not lessened by the presence of other issues susceptible to common proof. (*See* Order at 4-7.)

Federal law and California law provide exemptions for "outside salespersons."[10] The California exemption from overtime and other wages applies to an employee "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." Cal. Code Regs. tit. 8, §§ 11040(1)(C), (2)(M). Under California law, a court evaluating the applicability of the outside salesperson exemption must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description. *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 9 (Cal. 1999). This entails a two-step inquiry. *See*, *e.g.*, *Campbell v. PriceWaterHouseCoopers*, LLP, 253 F.R.D. 586, 600 (E.D. Cal. 2008). First, the court examines in an individualized fashion the work actually performed by the employee to determine how much of that work is exempt. *Id.* Second, the court determines whether the

---

[10]The Tenth Circuit summarized the rationale underlying these exemptions as follows:

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941).

employee's work was consistent with the employer's expectation and whether those expectations were realistic.[11] *Id.*; *accord Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 246 (C.D. Cal. 2006), *aff'd in relevant part*, 275 F. App'x 672 (9th Cir. 2008).

Under federal law, the FLSA's exemption found in 29 U.S.C. § 213(a)(1) exempts employees whose "primary duty" is making sales or "obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer," and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).[12] Similar to the California exemption, analysis of the FLSA exemption is a fact-intensive inquiry. *See*, *e.g.*, *Tumminelo v. United States*, 14 Cl. Ct. 693, 697 (1988) ("The determination of whether an exemption applies to a given individual . . . is a very fact-specific exercise.").

**B**

Plaintiffs ask us to follow the *Wang* decision and adopt a rule that class certification is warranted under Rule 23(b)(3) whenever an employer uniformly classifies a group of employees as exempt, notwithstanding the requirement that the district court conduct an individualized analysis of each employee's actual work activity. *See* 231 F.R.D. at 612-13; *see also Wiegele v. FedEx Ground Package Sys., Inc.*, No.

---

[11]The California Supreme Court has cautioned that a defendant cannot defeat class certification simply by raising an exemption as an affirmative defense, *Sav-On Drug Stores, Inc. v. Superior Court*, 96 P.3d 194, 207 (Cal. 2004), but has also stated that "[a]ny dispute over how the employee actually spends his or her time, of course, has the potential to generate individual issues." *Id.* at 206 (internal citations and quotation marks omitted).

[12]The term "primary duty" includes "work performed incidental to and in conjunction with the employee's own outside sales." 29 U.S.C. § 541.500(b).

06cv1330, 2008 WL 410691, *7-10 (S.D. Cal. Feb. 12, 2008) (relying on *Wang* and certifying class of former FedEx managers based on application of exemption). This is essentially the approach adopted by the district court in *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1068 (N.D. Cal. 2007), which is also before us on appeal.

**[9]** We decline to adopt such an approach because—as set forth in greater length in our opinion in *In re Wells Fargo*— we hold that a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry. *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, No. 08-15355, slip. op. at 8335-36. As we stated there, focusing on a uniform exemption policy alone does little to further the purpose of Rule 23(b)(3)'s predominance inquiry, which requires an assessment of the relationship between individual and common issues. *Id.* Instead of adopting what would essentially be a bright-line presumption in favor of class certification, we favor an approach that takes into consideration all factors that militate in favor of, or against, class certification. *Id.* at 8334. The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy. *See Zinser*, 253 F.3d at 1189.

Our approach is consistent with that taken by several district courts with respect to evaluating class certification in the wage exemption context.[13] These courts acknowledged the employer's uniform application of an exemption to employees, but focused on whether the employer exercised some

---

[13]However, as is apparent from the *Wang* and *In re Wells Fargo* decisions, no consensus has developed. *See Heffelfinger v. Elec. Data Sys., Inc.*, No. CV 07-00101 MMM (Ex), 2008 U.S. Dist. LEXIS 5296, *75-92 (C.D. Cal. Jan. 7, 2008); Steven B. Katz, *A Flurry of Recent Court Decisions Have Refined the Contours of California's Wage and Hour Laws*, Los Angeles Lawyer, June 2008, at 29-30.

level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof. *See*, *e.g.*, *Sepulveda*, 237 F.R.D. at 247-49 (denying class certification), *aff'd in relevant part*, 275 F. App'x at 672; *Alba v. Papa John's USA, Inc.*, No. CV 05-7487 GAF, 2007 WL 953849, *10-13 (certifying sub-classes); *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056, *5-10 (N.D. Cal. Aug. 31, 2006) (certifying class); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ("Where . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.").[14]

**[10]** Here, the district court weighed the relevant considerations and properly focused on whether class certification would enhance efficiency and further judicial economy. It stated that "in cases where exempt status depends upon an individualized determination of an employee's work, and where plaintiffs allege no standard policy governing how employees spend their time, common issues of law and fact may not predominate." (Order at 5 & n.2.) The district court further acknowledged that federal courts have permitted class actions in exemption mis-classification cases and that in such cases "the plaintiffs generally have alleged facts regarding (a) company-wide policies governing how employees spend their time, or (b) uniformity in work duties and experiences that diminish the need for individualized inquiry." (*Id.* at 4-5 &

---

[14]We cite the *Tierno* and *Alba* decisions for their respective discussions of the presence of centralized corporate policies detailing employees' job duties and responsibilities that reflect the realities of the workplace. Consistent with our holding in *In re Wells Fargo*, we do not embrace any dispositive reliance in those decisions on the rule from *Wang*. *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, slip. op. at 8334-36.

n.1.) It did not suggest that the lack of a common policy necessarily defeats certification as a matter of law, but that the lack of that type of evidence in this case reduced the number of issues susceptible to common proof. Plaintiffs seek to minimize the district court's main concern—that although there are common issues, including uniform classification, the inquiry into each HLC's exempt status would burden the court. (*Id.* at 6 ("The principal factor in determining whether common issues of fact predominate is whether the uniform classification, right or wrong, eases the burden of the individual inquiry.").) But this is a legitimate concern. Plaintiffs' claims will require inquiries into how much time each individual HLC spent in or out of the office and how the HLC performed his or her job; all of this where the HLC was granted almost unfettered autonomy to do his or her job. This must be considered along with the lack of issues subject to common proof that would actually ameliorate the need to hold several hundred mini-trials with respect to each HLC's actual work performance.

Plaintiffs argue that these trial burdens could be mitigated through the use of "innovative procedural tools" such as questionnaires, statistical or sampling evidence, representative testimony, separate judicial or administrative mini-proceedings, expert testimony, etc. They also argue that the district court could have certified the entire class subject to later modification of the class, redefine the class, or certify subclasses. These arguments are not persuasive in light of our determination that Plaintiffs' claims require a fact-intensive, individual analysis of each employee's exempt status. Moreover, Plaintiffs have not provided authority for the proposition that the district court abused its discretion by not certifying a class and using these tools. It is not certain that these tools would actually assist the court, and the decision to use such tools is

within the discretion of the district court.[15]

**[11]** Here, the district court correctly selected and applied Rule 23's criteria, and there is no persuasive evidence in the record that it relied on an improper factor, failed to consider a factor entitled to substantial weight, or mulled the correct mix of factors but made a "clear error of judgment in assaying them." *Parra*, 536 F.3d at 977-78. Accordingly, the district court did not abuse its discretion.

## V

We decline to adopt Plaintiffs' proposed rule that a defendant may not move to deny class certification under Rule 23(b)(3) unless and until the plaintiffs have affirmatively moved to certify a class. In addition, we conclude that the district court did not abuse its discretion by considering Countrywide's motion where Plaintiffs had a sufficient opportunity to present its case in favor of class certification. Finally, consistent with our decision in *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, issued today, we decline to adopt a rule that a Rule 23(b)(3) class is presumptively proper where an employer uniformly classifies a group of employees as

---

[15]Plaintiffs also argue that the district court abused its discretion by improperly analyzing the merits of the underlying claims when it noted that Plaintiffs' proposed class includes HLCs who, through their own declarations, are admittedly exempt. (Order at 7 ("[I]f the Court were to certify this proposed class, it would allow putative class members who, by their own admission do not qualify for relief, to litigate inherently meritless claims through a representative action.").) Plaintiffs characterize the district court as denying certification based on the taint of a few putative class members. Plaintiffs' argument is not persuasive. The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis, *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983), and the court's discussion of Plaintiff's inclusion of exempt employees in the putative class focuses on whether it militates against use of a representative action, which is within the district court's purview.

exempt. Here, the district court conducted a proper inquiry considering the relevant factors and, accordingly, its order denying class certification is **AFFIRMED**.