**John T. SHAW, et al., Plaintiffs,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC., et al., Defendants.**

**Case No. 13cv1295–JLS (BLM).**

United States District Court, S.D. California.

Signed March 18, 2015.

---

95. *See* Docket No. 405 at 4.

Christopher Lane, G. John Cento, Cento Law LLC, Eric S. Pavlack, Pavlack Law, LLC, Indianapolis, IN, Matthew J. Zevin, Stanley Iola, LLP, San Diego, CA, Mara McRae, McRae Brooks Warner LLC, Atlanta, GA, for Plaintiffs.

Kelly V. O'Donnell, Jones Day, San Diego, CA, Adam W. Wiers, Jones Day, Lucia Nale, Matthew D. Provance, Thomas Panoff, Mayer Brown LLP, Chicago, IL, David A. Berkley, Scott J. Hyman, Severson & Werson, APC, Irvine, CA, Steven E. Rich, Mayer Brown LLP, Los Angeles, CA, for Defendants.

**ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DEFENDANT'S WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS**

BARBARA L. MAJOR, United States Magistrate Judge.

Currently before the Court is Plaintiffs' February 16, 2015 motion to compel Defendant's Wells Fargo Bank, N.A.'s responses to discovery requests [ECF No. 83–1 ("MTC")], Defendant's Wells Fargo Bank, N.A.'s February 23, 2015 opposition [ECF No. 84 ("Oppo.")], and Plaintiffs' February 27, 2015 reply [ECF No. 88 ("Reply")]. For the reasons set forth below, the Court GRANTS Plaintiffs' motion to compel Defendant's Wells Fargo Bank, N.A.'s responses to Plaintiffs' requests for production of documents.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2013, Plaintiffs filed their Class Action Complaint, on August 19, 2013—a First Amended Class Action Complaint, and on May 20, 2014—a Second Amended Class Action Complaint ("SACAC"), the operative pleading in this case. ECF Nos. 1, 30, 56. In the SACAC, Plaintiffs and proposed class representatives, John T. Shaw, Kenneth Coke and Raymond Rydman brought the action against Defendants Experian Information Solutions, Inc. ("Experian"), Wells Fargo Bank, N.A. ("Wells Fargo") and CitiMortgage, Inc. ("CitiMortgage") (Wells Fargo and CitiMortgage, collectively, the "Furnishers") seeking damages and injunctive relief from Defendants' alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA"). ECF No. 56 at 2.

Plaintiffs allege that Experian, a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, collects consumer credit information from the Furnishers, and electronically processes and stores the information in its databases. *Id.* at 4–5. Plaintiffs further allege that the Furnishers report consumer credit information to Experian and other credit reporting agencies through "coded tapes" by utilizing standard formatting known as "Metro 2." *Id.* at 6. Metro 2 provides a basic reporting format and standard codes for reporting certain kinds of consumer credit information. *Id.* at 7. The Consumer Data Industry Association publishes the Credit Reporting Resources Guide, which contains "a comprehensive overview of the Metro 2 format" and "recommended credit reporting procedures for certain types of consumer credit reporting." *Id.* at 7–8. The Guide provides two options for reporting short sales depending on whether the deficiency between the sale price and the balance owed on the loan is forgiven. *Id.* at 8. Plaintiffs claim that the Furnishers "did not report and Experian did not maintain [Plaintiffs'] short sale results and the accounts

related thereto as required by the Guide, Metro 2 formatting and their own dedicated policies and procedures for the proper reporting of the results of a short sale." *Id.* at 9.

Plaintiffs allege that their mortgage short sales were incorrectly reported on their Experian credit reports as foreclosures, bankruptcies, or other inaccurate derogatory events. *Id.* at 2, 11–12, 20–22. Plaintiffs further argue that Defendants violated the FCRA when they failed to correct the allegedly inaccurate reporting after Plaintiffs informed them about the issue. *Id.* at 12, 21–23.

Plaintiffs seek to represent the following proposed classes:

**Class No. 1:** All consumers domiciled or residing in the United States for whom Experian has furnished a consumer report within two years of the filing of this initial Complaint in this action and after which reported the results of a short sale by which the consumer's lender released its lien on the real estate and accepted less than the amount owed on the debt in such a way that a consumer report for that consumer would indicate or suggest that a consumer lost the real estate through foreclosure and/or that the consumer had a currently delinquent account.

**Class No. 2:** All consumers domiciled or residing in the United States from whom Experian received a request for reinvestigation related to the reporting of the consumers' short sales by which the consumer's lender released its lien on the real estate and accepted less than the amount owed on the debt and for whom Experian was inaccurately reporting those short sales.

**Class No. 3:** All consumers domiciled or residing in the United States from whom Experian received a request for the consumers' files but for whom Experian did not disclose all information contained in those files.

**Class No. 4:** All consumers domiciled or residing in the United States who disputed the accuracy of their short sale related accounts with Furnishers through Experian or any other consumer reporting agency and for whom the Furnishers have inaccurately, incompletely or misleadingly reported to any consumer reporting agency the results of a short sale by which the Furnishers released their liens on the real estate and accepted less than the amount owed on the debt, including, but not limited to, by reporting the mortgage or mortgage related account in such a way that it would appear to the subscriber or user of a consumer report that the consumer lost the real estate through foreclosure, that the consumer had filed for bankruptcy and/or that the consumer had a currently delinquent account.

*Id.* at 3–4. As such, one of the classes that Plaintiffs intend to certify against Defendant Wells Fargo is comprised of consumers who disputed the accuracy of credit reporting of their short sale accounts with Wells Fargo. *See id.*

### LEGAL STANDARD

 The Federal Rules of Civil Procedure generally allow for broad discovery; authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. *Id.* There is no requirement that the information sought directly relate to a particular issue in the case. Rather, relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained

from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C). Limits should be imposed where the burden or expense of the proposed discovery outweighs the likely benefits. *Id.*

A party may request the production of any document within the scope of Rule 26(b). Fed.R.Civ.P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R.Civ.P. 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Fed.R.Civ.P. 34(a)(1).

■ The Ninth Circuit has explained that "[d]istrict courts have broad discretion to control the class certification process, and 'whether or not discovery will be permitted . . . lies within the sound discretion of the trial court.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir.2009) (quoting *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir.1975)). "The plaintiff in a class action 'bears the burden of . . . showing that . . . discovery is likely to produce substantiation of the class allegations.' . . . Once this showing is made, it is an abuse of discretion to deny precertification discovery." *Perez v. Safelite Grp. Inc.*, 553 Fed. Appx. 667, 668–69 (9th Cir.2014), as amended on denial of reh'g and reh'g en banc (Mar. 7, 2014) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985) and *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir.1977)); *see also Franco v. Bank of Am.*, 2009 WL 8729265, at *3 (S.D.Cal. Dec. 1, 2009) (citing *Mantolete*, 767 F.2d at 1424) (while courts generally allow plaintiffs to obtain discovery from defendants related to class certification issues, plaintiffs bear the burden of showing that such discovery is

likely to produce substantiation of the class allegations).

■ Discovery in a putative class action at the pre-certification stage is generally limited to such certification issues as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class. *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D.Cal.2014) (citation omitted). "Although discovery on the merits is usually deferred until it is certain that the case will proceed as a class action, the merits/certification distinction is not always clear," because the facts that are relevant to the class determination frequently overlap with the facts that are relevant to the merits of the case. *Gusman*, 298 F.R.D. at 595 (citing *Wal–Mart Stores Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011) (explaining that often the "rigorous analysis" under Rule 23(a) "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.")).

## *DISCUSSION*

Plaintiffs ask the Court to compel Defendant Wells Fargo to produce "[a]ll ACDV[]s[1] received from Experian since January 2012 that have an 'AU' special comments code,"[2] and that are related to a mortgage account. MTC at 10. In support, Plaintiffs argue that data furnishers are liable under the FCRA when they receive notice of a consumer dispute from a credit reporting agency, but fail to investigate and remedy the dispute. *Id.* at 8 (citing 15 U.S.C. § 1681i). Plaintiffs assert that Wells Fargo mortgage short sales were reported as foreclosures or other derogatory credit events, and that Wells Fargo did not correct the problem after Plaintiffs and other consumers raised the issue. *Id.* at 7–8. Plaintiffs claim that ACDVs are routinely relied upon in the FCRA litigation to "analyze

---

**1.** Plaintiffs state that "Automated Credit Dispute Verification" ("ACDV") is an "electronic form or collection of data generated by an automated credit dispute system called e-OSCAR." MTC at 4 n. 2; *see also id.* at 8.

**2.** Plaintiffs explain that the "AU" code contained in ACDVs, originates with Wells Fargo and other mortgage account furnishers, and that Experian

takes the code and creates another code, which allegedly results in inaccurate foreclosure reporting. *Id.* at 8. Plaintiffs further state that after a consumer disputes the inaccurate reporting, Wells Fargo responds by returning the AU code, and as a result, the "cycle continues unabated." *Id.*

when and how consumer credit report disputes were reported to [credit reporting agencies] and transmitted to data furnishers, and how the data furnishers evaluated and responded to those consumer disputes." *Id.* at 4 n. 1.

Plaintiffs further state that they seek the requested information to substantiate their motion for class certification, because the requested ACDVs will allow them to determine the number and identities of class members, which will demonstrate FRCP 23(a)(1) numerosity and ascertainability. *Id.* at 5, 10. Plaintiffs also reference District Judge Sammartino's Order on Defendants' motion to dismiss Plaintiffs' SACAC. *Id.* at 6–7 (citing ECF No. 70 at 10–11 (noting that "Plaintiffs allege at least some facts pertaining to each of Federal Rule of Civil Procedure 23's basic requirements for class certification" and recognizing Plaintiffs' need for additional discovery before class certification)). Plaintiffs also contend that their request is reasonably limited to the ACDVs containing the "AU" code related to Wells Fargo mortgage accounts. *Id.* at 8–9. Finally, Plaintiffs note that it would be fundamentally unfair to allow Wells Fargo to argue that the alleged variations among the ACDVs make class certification impossible, while at the same time allowing Wells Fargo not to produce those documents. *Id.* at 9.

In its opposition, Wells Fargo asks the Court to deny Plaintiffs' motion to compel by bifurcating Plaintiffs' discovery requests to a "post-certification inquiry and/or merely order[ing] production of a names-only redacted spreadsheet." Oppo. at 16–17, 21. In support, Wells Fargo asserts that Plaintiffs' requested discovery "does not seek objective, uniform criteria, but prematurely goes to the merits of each putative class member's claims," and that Plaintiffs' proposed "pre-certification ACDV–by–ACDV factual review" violates the rule that "a class can only exist if its 'members can be ascertained by reference to *objective* criteria.' " *Id.* at 6 (emphasis in original) (citing *Algarin v. Maybelline, LLC,* 300 F.R.D. 444, 454 (S.D.Cal.2014) (citations omitted)). Wells Fargo further asserts that it has not objected to all pre-certification class-based discovery, points out that it has produced documents related to its policies and procedures, and claims that it will soon produce internal communications related to the issues in this case.[3] *Id.* at 15–16. Wells Fargo also asserts that the production of the requested ACDVs will result in the disclosure of personal information, including Wells Fargo's customers' identities, contact information and social security numbers, as well as potential defaults or delinquencies in their payments history, and argues that the harm to the third parties resulting from the requested production significantly outweighs the relevance of the requested information to Plaintiffs' claims. *Id.* at 7, 17–19. Wells Fargo states that it can perform the database search to respond to Plaintiffs' discovery requests, but claims that the request will yield a substantial number of ACDVs related to non-short sale accounts, because the "AU" code is also used for events other than short sales, and asserts that the request is thus grossly overbroad.[4] *Id.* at 14–15; ECF No. 84–1, Declaration of Bryan Drummond ("Drummond Decl.") at 3.

Finally, Wells Fargo claims that it will bear an undue burden as a result of the "preparation, review and production" of the requested ACDVs, and that absent class certification, the burden is not warranted. *Id.*

---

3. Specifically, Wells Fargo states that it has produced over 3,400 pages of documents related to Plaintiffs' and Wells Fargo's policies and procedures, will be producing certain relevant internal communications, and will produce a FRCP 30(b)(6) witness. *See* Oppo at 16; ECF No. 84–2, Declaration of David A. Berkley ("Berkley Decl.") at 4.

4. Wells Fargo further asserts that there is a "disconnect" between the parties' meet and confer process and Plaintiffs' motion, because the motion introduces an additional element by seeking all ACDVs received from Experian since January 2012 containing an "AU" special comments code *"related to a Wells Fargo mortgage account."* Oppo. at 10–11 (emphasis in original). The Court agrees with Plaintiffs' arguments that because the case concerns mortgage short sales only, it was "implicit" during the parties' prior meet and confers that Plaintiffs requested ACDVs for mortgage accounts only, and thus there is no disconnect between the parties' meet and confer discussions and Plaintiffs' motion to compel. *See* Reply at 2.

at 19–21. In support, Wells Fargo submits the declaration of the Vice President of Credit Reporting in Wells Fargo's Credit Disputes Division, Bryan Drummond. *See* Drummond Decl. Mr. Drummond asserts that the requested production will entail a protracted and time-consuming data compilation process that could last several months, that Wells Fargo does not actually store ACDVs, but only ACDV data consisting of 360 data fields per record, and that because the request may return irrelevant ACDV data, Wells Fargo will have to pull individual loan files for each search result and manually review those files. *Id.* at 2–3. Wells Fargo thus asserts that the Court should deny Plaintiffs' motion to compel production of the ACDVs "unless and until Plaintiffs can certify a class." Oppo. at 11.

In their reply, Plaintiffs limit their production request to *"[d]ata from all ACDVs (other than private identifying information)* received from Experian since January 2012 that has an 'AU' special comments code and that is related to a mortgage account." Reply at 10 (emphasis added). Plaintiffs claim that the requested ACDVs will contain "sufficient objective and systematic information" to permit class certification and to identify class members,[5] and assert that the requested information is needed in light of Wells Fargo's refusal to produce any discovery concerning absent class members' disputes. *Id.* at 3–4. Plaintiffs object to Wells Fargo's request to bifurcate class and merits discovery by pointing out that non-expert discovery closes in less than a month and by arguing that even if discovery were bifurcated, the requested ACDVs would still be discoverable because they are relevant to class certification. *Id.* at 4. Plaintiffs also address Wells Fargo's privacy concerns by stating that they will accept ACDVs with all personal information redacted, and Wells Fargo's argument that their discovery requests might return irrelevant

data by claiming that the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 4–5.

Plaintiffs also assert that Wells Fargo has failed to demonstrate any undue burden to produce the requested data. *Id.* at 5–9. Plaintiffs argue that Mr. Drummond's declaration offered by Wells Fargo to support its assertion of undue burden lacks the requisite detail, and challenge the validity of the representations made in the declaration. *See id.; see also* ECF No. 88–2, Declaration of Lance Reger ("Reger Decl."). Plaintiffs state that in light of Wells Fargo's clarification that it does not store ACDVs, but only ACDV data consisting of 360 data fields per record, Plaintiffs would "accept, and even prefer" the 360 data fields comprising the ACDVs that otherwise satisfy the requested search criteria. Reply at 6. Plaintiffs further claim that Wells Fargo will not be required to pull individual loan fields for each search result and manually review the files, because Plaintiffs would accept the production including accounts which did not involve short sales. *Id.* at 6–7. Finally, Plaintiffs ask the Court, in case it is persuaded by Wells Fargo's claim of undue burden, to refrain from ruling on the instant motion to compel until Plaintiffs complete their March 12, 2015 deposition of Wells Fargo,[6] and obtain additional information to supplement the record. *Id.* at 9–10.

### a. *Plaintiffs' Requests for Production of Documents*

On October 22, 2014, Plaintiffs served their First Requests for Production of Documents ("RFPs") upon Defendant Wells Fargo. MTC, Exh. A. A number of requests concerned Wells Fargo's reporting of short sales to Experian and Wells Fargo's processing of

---

5. Plaintiffs claim that they will need the requested ACDVs to establish that their "claims are typical of the absent class members (typicality), that the class members can be identified with objective information from the ACDVs (ascertainability), that there are a sufficient number of class members to make joinder impracticable (numerosity), and that any potential individual characteristics of class members' credit disputes

do not predominate over common issues (predominance)." Reply at 3.

6. Plaintiffs explain that their 30(b)(6) deposition of Wells Fargo will, among other topics, address identity, interface, storage and search interface of the computer system that stores ACDV data. Reply at 9. Plaintiffs did not file a supplemental pleading. *See* Docket.

consumer disputes about credit reporting.[7] *See id.* On November 26, 2014, Wells Fargo responded and raised numerous objections, including objections to the scope and relevancy of Plaintiffs' requests, privilege, and argued that the requested information was more easily available from other sources, such as Experian. *See* MTC, Exh. B at 33–36, 39–41, 52–54, 61–62, 64–66.

#### b. *Relevance*

■ FRCP 26(b)(1) allows discovery of any matter that is relevant to any party's claim and defense and non-privileged. Fed. R.Civ.P. 26(b)(1). Plaintiffs' discovery requests seek information directly related to the subject matter of the litigation and are reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs request "[d]ata from all ACDVs (other than private identifying information) received from Experian since January 2012 that has an 'AU' special comments code and that is related to a mortgage account." Reply at 10. The Consumer Data Industry Associations' Credit Reporting Resource Guide, which provides specific instructions on Metro 2 credit reporting compliance, defines special comment code "AU" as "account paid in full for less than the full balance," and instructs data furnishers to utilize the "AU" code when reporting a short sale. *See* ECF No. 56 at 7–8; Oppo. at 8 n. 4. Wells Fargo furnished information about Plaintiffs' short sales to the consumer reporting agencies, including Experian, by using Metro 2 special comments code "AU." *See* MTC at 8; Oppo. at 8; ECF No. 56 at 7–8, 20. After receiving the "AU" codes from Wells Fargo, Experian added its own infor-

mation to the data in order to generate consumer reports, which Plaintiffs allege resulted in inaccurate reporting. *Id.; see also* MTC at 4 n. 2, 8. Plaintiffs also argue that after consumers disputed the allegedly inaccurate reporting, Wells Fargo responded by returning the "AU" code, and thus, the "cycle continue[d] unabated." MTC at 8.

As pointed out by Plaintiffs, the requested data will allow them to analyze "when and how" consumer credit disputes were reported to credit reporting agencies and transmitted to Wells Fargo, as well as how Wells Fargo evaluated and responded to such disputes. *See* MTC at 4 n. 2. Because Plaintiffs allege that Wells Fargo's mortgage short sales were reported as foreclosures or other derogatory credit events and that Wells Fargo did not correct the problem after Plaintiffs and other consumers raised the issue, and because one of the classes that Plaintiffs seek to certify is comprised of consumers who disputed the accuracy of credit reporting of their short sale accounts with Wells Fargo, the requested data is highly relevant to Plaintiffs' allegations and FRCP 23 class certification requirements. *See* ECF No. 56 at 3–4; *see also* Fed.R.Civ.P. 26(b)(1); 15 U.S.C. § 1681i; *see also Gusman*, 298 F.R.D. at 595 (citation omitted) (noting that "[a]lthough discovery on the merits is usually deferred until it is certain that the case will proceed as a class action, the merits/certification distinction is not always clear," because the facts that are relevant to the class determination frequently overlap with the facts that are relevant to the merits of the case.).

---

7. Plaintiffs' relevant RFPs sought the following: "[a]ny reported or stored Metro codes which relate in any way to the reporting of short sales" (RFP No. 21); "[a]ny and all Documents which show the codes which are or were used to insert the tradelines at issue in this case into Plaintiffs' files" (RFP No. 22); "[a]ny and all Documents or Communications which relate in any way to information or data you provided to Experian that relates in any way to the tradelines at issue in this case" (RFP No. 25); "[a]ny and all Documents contained within the computer system you use to process reinvestigations and which relate in any way to Plaintiffs or Plaintiffs' Files (RFP No. 26); "[a]ny and all Documents and Communications between You and [sic] any Defendant in this case regarding the collection or reporting of

short sale information" (RFP No. 36); "[a]ny and all Documents or Communications, of any date, relating to or analyzing how or by what policy, process, method or procedure You seek to comply with the requirements of 15 USC 1681i" (RFP No. 43); "[a]ny and all Documents or Correspondence which evidence the measures utilized by You to assess the accuracy of the consumer credit information You provide to Experian" (RFP No. 45); "[a]ny and all Documents or Correspondence which are relevant to Your contention that the procedures You use to report information to Experian and other credit reporting agencies related to Your customers' foreclosure and short sales are reasonable to assure the maximum possible accuracy of that information." (RFP No. 46). MTC, Exh. A at 6–8.

#### c. *Privacy*

■ Federal courts recognize a general right to privacy that can be raised in response to discovery requests. *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D.Cal.2011); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352–53 (N.D.Cal.2011) (citing *Wiegele v. FedEx Ground Package Sys.*, 2007 WL 628041, at *2 (S.D.Cal. Feb. 8, 2007)). However, the right of privacy is not an absolute bar to discovery. The resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right. *See Artis*, 276 F.R.D. at 352–53 ("Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' "). In class action suits, the disclosure of names, addresses, and telephone numbers is commonly allowed, because such disclosure "does not involve revelation of personal secrets, intimate activities, or similar private information, which have been found to be serious invasions of privacy." *Artis*, 276 F.R.D. at 353 (citing *Khalilpour v. CELLCO Partnership*, 2010 WL 1267749, at *3 (N.D.Cal. Apr. 1, 2010)).

Although Wells Fargo asserts that the requested production will result in the disclosure of its customers' identities, contact information, social security numbers, as well as account and dispute details, Plaintiffs agreed to accept the requested ACDV data "with all personal information redacted." Oppo. at 7, 17–19; Reply at 4–5. Furthermore, the requested data can be produced subject to a protective order limiting the use of the requested data and protecting it from disclosure. *See Artis*, 276 F.R.D. at 353; *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *10 (June 12, 2013). Additionally, as stated above, the requested information is highly relevant to Plaintiffs' claims in this litigation. Consequently, contrary to Wells Fargo's assertions, Plaintiffs' need for the requested information significantly outweighs Wells Fargo's customers' privacy rights in the information. *See Artis*, 276 F.R.D. 348, 353.

#### d. *Undue Burden*

■ As discussed above, the discovery that Plaintiffs seek is relevant. Furthermore, the requested discovery is not "unreasonably cumulative or duplicative" and cannot "be obtained from some other source that is more convenient, less burdensome, or less expensive." [8] Fed.R.Civ.P. 26(b)(2)(C). Thus, the burden is on Defendant to demonstrate that the discovery is unduly burdensome. *Pham v. Wal–Mart Stores, Inc.*, 2011 WL 5508832, at *3 (D.Nev. Nov. 09, 2011) (citing *Residential Constructors, LLC v. Ace Prop. and Cas. Ins. Co.*, 2006 WL 3149362, at *9 (D.Nev. Nov. 1, 2006)). In order to satisfy this burden, Defendant "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents." *Id.* The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence. *Pham*, 2011 WL 5508832, at *3 (citing *In re Toys "R" Us–Delaware, Inc. Litigation*, 2010 WL 4942645, at *6 (C.D.Cal. July 29, 2010)).

Wells Fargo claims that it will bear an undue burden as a result of the "preparation, review and production" of the requested ACDVs before class certification, and provides as evidence the declaration of the Vice President of Credit Reporting in Wells Fargo's Credit Disputes Division, Bryan Drummond. *See id.* at 19–21; Drummond Decl. Mr. Drummond explains that Wells Fargo does not store ACDVs, but only data consisting of approximately 360 unique data fields per each ACDV, and that the requested production will entail a protracted and time-consuming data compilation process. Drummond Decl. at 2–4. Mr. Drummond claims that Wells Fargo will first have to construct the dataset, which will take Wells Fargo's Servicing Data Analytics External Reporting

---

**8.** While Wells Fargo states in its objections to Plaintiffs' interrogatories at issue in the instant motion that the requested information is more readily available from other sources, such as Experian, Wells Fargo does not allege any facts in its briefing on the instant motion to compel to substantiate such an assertion. *See* MTC, Exh. B; Oppo.

Team ("SDA team") approximately two weeks to compile, and will then have to "ensure [that] the appropriate mapping and validating for each of the 360 fields would be completed and approved by the line of business," which would take one SDA team member working 8 hours per day additional four to six weeks. *Id.* at 3. Mr. Drummond further claims that because the process described above would only create a spreadsheet, Wells Fargo would then have to "extract the information from each account in order to format and replicate the ACDV onto a printable image," and save the image in a Portable Document Format ("PDF"), which would take one team member working 8 hours per day additional six to eight weeks. *Id.* Wells Fargo will then have to determine whether the ACDVs involved a short-sale mortgage account by checking the underlying loan files associated with each ACDV and determining the basis for the dispute, which could result in additional "hundreds, if not thousands," of personnel hours. *Id.* at 3–4.

Plaintiffs respond to Wells Fargo's assertion of undue burden by submitting a declaration of their database consultant, Lance Reger, who states that he finds it "very unusual that it would take an experienced Wells Fargo data analytics team two full weeks to run the search requested by Plaintiffs to compile the requested dataset," because in his experience, designing an appropriate data query to search the requested fields would entail a "relatively simple and quick process." Reger Decl. at 3. Mr. Reger further states that "[i]t would also be simple and quick to design the query so that it would output all 360 fields of data for each record fitting the search criteria and populate those fields into an Excel, Access, or other readily accessible database format." *Id.* Mr. Reger alleges that "[a]ctually running the query and obtaining the output would also be simple and quick," and notes that he frequently runs more complicated searches on vast data sets that take, at most, several days and require little to no human intervention or monitoring. *Id.* at 3–4. Finally, Mr. Reger questions Mr. Drummond's assertion that 160–240 hours would be necessary to map and validate the data, especially in light of Plaintiffs' willingness to accept the raw data output by the requested data query. *Id.* at 4–5; *see also* Drummond Decl. at 3–4.

The Court concludes that Wells Fargo has failed to establish an undue burden justifying the denial of Plaintiffs' discovery requests. Wells Fargo acknowledges that it can conduct the requested search of its database, but claims that the burden and expense of such production are not warranted "unless and until Plaintiffs can certify a class." *See* Drummond Decl. at 2; Oppo. at 11. The Court disagrees. As set forth above, the requested information, as limited by Plaintiffs in their reply, seeks data relevant to Plaintiffs' claims and to the FRCP 23 class certification efforts. Moreover, the Plaintiffs limited their request in response to the concerns stated by Mr. Drummond and the modified discovery response should be easier, less time-consuming, and less expensive to compile than suggested by Mr. Drummond. In addition, the Court finds the estimate and explanation provided by Mr. Reger to be more persuasive, appropriate, and accurate than the one provided by Mr. Drummond.

## CONCLUSION

For the reasons set forth above, the Court finds that the information sought in Plaintiffs' discovery requests at issue in the instant motion is relevant and calculated to lead to the discovery of admissible. evidence and its production is not unduly burdensome. Accordingly, Plaintiffs' motion is **GRANTED** and Wells Fargo is ordered to produce data from all ACDVs (other than private identifying information) received from Experian since January 2012, that has an "AU" special comments code and that is related to a mortgage account. Defendant is ordered to produce the responsive data by *March 30, 2015.*

**IT IS SO ORDERED.**