Terry P. BOYD, Ethel Joann Parks, Sonia Medina, Linda Zanko, and Victor Galaz, Plaintiffs on behalf of themselves and all others similarly situated,

v.

BANK OF AMERICA CORP., LandSafe, Inc., and LandSafe Appraisal Services, Inc., Defendants.

No. SACV 13–00561–DOC (JPRx).

United States District Court, C.D. California, Southern Division.

Signed June 27, 2014.

Bryan J. Schwartz, William C. Jhaveri–Weeks, Bryan Schwartz Law Offices, Oakland, CA, Aidan C. McGlaze, Benjamin Schonbrun, Michael D. Seplow, Schonbrun Desimone Seplow Harris & Hoffman LLP, Venice, CA, Wilmer J. Harris, South Pasadena, CA, for Plaintiffs.

Christopher A. Killens, Matthew Charles Kane, Michael David Mandel, John A. Van Hook, McGuire Woods LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION [118]

DAVID O. CARTER, District Judge.

Before the Court is the Motion for Class Certification ("Motion" or "Mot.") (Dkt. 118) filed by Terry P. Boyd, Ethel Joann Parks, Sonia Medina, Linda Zanko, and all others similarly situated. Having considered the written submissions and arguments presented at the hearing, the Court GRANTS the Motion.

1. LandSafe Appraisal Services, Inc. is a subsidiary of LandSafe, Inc., which, in turn, is a subsidiary of Bank of America Corporation. First Decl. of Janet Binongcal ("First Binongcal Decl.") (Dkt. 159) ¶ 4; Decl. of K. Scott Nicholson ("Nicholson Decl.") (Dkt. 159) ¶ 3.

## I. BACKGROUND

Defendant LandSafe Appraisal Services, Inc.[1] ("LandSafe") provides its customers with market value appraisals for properties in connection with residential mortgage loan transactions. Opp'n at 1. Plaintiffs Terry P. Boyd, Ethel Joann Parks, Sonia Medina, and Linda Zanko ("Proposed Class Representatives") are current and former residential appraisers[2] ("Residential Appraisers") employed by LandSafe. First Binongcal Decl. ¶¶ 7, 8.

LandSafe classifies its Residential Appraisers as 'exempt' under the California Labor Code. Decl. of Bryan Schwartz ("Schwartz Decl.") (Dkt. 119) Ex. A ("30(b)(6) Dep.") 34:7–16, 170:15–171:19. Plaintiffs believe they are not exempt, and assert California state law claims for: (1) failure to pay overtime compensation, Second Am. Compl. ("SAC") (Dkt. 42) ¶¶ 61–64; (2) failure to provide accurate itemized wage statements, id. ¶¶ 65–67; (3) failure to provide rest breaks and meal periods, id. ¶¶ 68–74; (4) unfair business practices, id. ¶¶ 75–77; (5) late pay and waiting time penalties, id. ¶¶ 78–83; and (6) civil penalties under the Private Attorneys General Act, id. ¶¶ 84–95.

### A. Proposed Classes

Plaintiffs move to certify one class and two subclasses. See Mot. at 25. The following class (the "California Class") asserts claims for failure to pay overtime compensation, failure to provide rest breaks and meal periods, and unfair business practices:

All persons who are or have been employed by Defendants as Appraisers, including employees with the job title "Residential Appraiser" and any other employee performing the same or similar job duties for Defendants, within the State of California at any time from four years prior to the filing of this Complaint to the final disposition of this case.

2. A subclass ("Review Appraisers") has settled and is currently awaiting the Court's preliminary approval of partial class action settlement. See Unopposed Motion for Preliminary Approval of Partial Class Action Settlement (Dkt. 166).

SAC ¶ 36; Mot. at 1.[3] Plaintiffs also move to certify two subclasses (together, the "Subclasses") of the California Class. First, the following subclass (the "California Waiting Time Penalties Subclass") asserts a claim for late pay and waiting time penalties:

All California Class members who are no longer employed by Defendants and have not been employed by Defendants for more than 72 hours.

SAC ¶ 37. Second, the following subclass (the "California Itemized Wage State and PAGA Penalties Subclass") asserts claims for failure to provide accurate itemized wage statements and civil penalties under PAGA:

All California Class members who are currently employed by Defendants or were employed by Defendants at some point within the year preceding the filing of the initial Complaint in this action.

*Id.* ¶ 38.

### B. Duties of Residential Appraisers

Before Defendant Bank of America can sell a mortgage on a home, a Residential Appraiser must evaluate the property and attach the report as part of the loan package. 30(b)(6) Dep. 153:13–23; Decl. of Terry Boyd (Dkt. 44-2) ¶ 3; Decl. of Linda Zanko (Dkt. 44-14) ¶ 3; Decl. of Ethel Parks (Dkt. 10) ¶ 3; Decl. of Sonia Medina (Dkt. 44-9) ¶ 3; Decl. of Harvey Waggoner (Dkt. 44-13) ¶ 3; Decl. of Michael Petris (Dkt. 44-11); Decl. of Eric Costa (Dkt. 44-3); Decl. of Ricky Leung (Dkt. 44-8); Decl. of Karen Lampert (Dkt. 44-7); and Decl. of May Lonn Chan–Villareal (Dkt. 63-4).[4] Ordinarily, each report produced by a Residential Appraiser corresponds to a single mortgage sale by Bank of America. 30(b)(6) Dep. 157:18–158:3 (testifying that "99 point whatever percent" of the time, an appraisal report "is specific to … a particular loan that Bank of America's trying to sell.").

Residential Appraisers are assigned properties to inspect in their "territories," Res. Appr. Decl. ¶ 11, through a computer program called Appraisal Port, 30(b)(6) Dep.

50:4–11. Generally, the Appraisers may not "pick and choose" their assignments and rejecting an assignment "could count against them." *Id.* 276:1–24. Once they receive an assignment through the Appraisal Port, a Residential Appraiser's actions are timed. Res. Appr. Decl. ¶ 14.

Residential Appraisers must gather a list of data about each property, coordinate a visit to the property, inspect and photograph the property, and look up prices of similar properties ("Comparables") in the neighborhood. Res. Appr. Decl. ¶¶ 6–9. It is up to each Residential Appraiser to determine the Comparables that are most relevant for analyzing the subject property. Decl. of Todd Ashley ¶ 6; Decl. of Michael Carroll ¶ 7; Decl. of Holly A. Cruickshank ¶ 8; Decl. of Jessica Dyer ¶ 4; Decl. of Robert Harris ¶ 6; Decl. of Daria Jow ¶ 5; Decl. of Bennett Mann ¶ 5. The Residential Appraisers then enter the information on a variety of federal forms, depending on the type of property. 30(b)(6) Dep. 225:19–227:13.

Apart from completing appraisal reports, Residential Appraisers do not supervise anyone, advise management, advise loan officers, negotiate, or bind LandSafe in any way. *See* Res. Appr. Decl. ¶¶ 3–4; 30(b)(6) Dep. 117:21–118:1, 132:11–133:5, 158:9–160:10, 149:1–3, 148:2–15, 150:12–151:14, 162:5–16.

### C. Qualifications to Be a Residential Appraiser

California has adopted and codified the minimum licensing and certification standards set out by the federal Appraiser Qualifications Board. Cal.Code Regs., tit. 10, §§ 3500–44. To become licensed, Residential Appraisers need to complete 150 hours of coursework, pass an exam, and attain 2,000 hours of experience as a supervised appraisal trainee. *Id.* To become certified, Residential Appraisers need to hold the equivalent of an Associate's degree, complete 200 hours of coursework, pass an exam, and attain 2,500 hours of experience. *Id.* Residential Appraisers are also required to complete con-

---

**3.** At the hearing, Plaintiffs advised the Court that in light of the settlement of Review Appraiser claims, the phrase "Review Appraisers" should be removed from the class definition.

**4.** Together, these declarations will be referred to as the "Res. Appr. Decl.".

tinuing education coursework. Nicholson Decl. ¶ 13; Cal.Code Regs., tit. 10, §§ 3661–69.

### D. Policies and Procedures that Apply to Residential Appraisers

The Uniform Standards of Professional Appraisal Practice ("USPAP") "represents the generally accepted and recognized standards of Appraisal practice in the United States." Def.'s Request for Judicial Notice ("Def.'s RJN") Ex. A, p. U–1. Pursuant to the Rules of Professional Conduct for appraisers, California requires all appraisers to comply with the USPAP. Cal.Code Regs., tit. 10, Article 11, § 3701 et seq.

In addition to the USPAP, Residential Appraisers must adhere to a number of corporate policies and state and federal guidelines. See, e.g., Schwartz Decl. ¶¶ 3–8 & G (Bank of America "Property and Appraisals" guidelines); Ex. E (LandSafe "Scope of Work" for Form 1004); Ex. C (Fannie Mae "Uniform Appraisal Dataset" Guidelines); Ex. B (LandSafe "Unacceptable Appraisal Practices No. 7" in selection of Comparables); Ex. D (LandSafe "Appraisal Reporting Requirements Update"). Adhering to these documents is "not an optional thing." 30(b)(6) Dep. 339:2–340:9; 281:14–19. If Residential Appraisers fail to meet these requirements, they are penalized. Staff Appr. Decl. ¶ 17.

These policies are uniform throughout California and nationwide. 30(b)(6) Dep. 339:9–15, 281:14–19, 274:1–8, 355:11–18, 333:13–334:25, 309:17–23. The job descriptions of Residential Appraisers are "standardized nationwide." 30(b)(6) Dep. 46:16–20. Compensation plans for all Residential Appraisers are uniform nationwide, and emphasize quotas and productivity. 30(b)(6) Dep. 128:2–13, 347:13–16, 129:9–23.

### II. LEGAL STANDARD

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a), and satisfies one of the three subdivisions of Rule 23(b). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). First, Plaintiffs must show the following: (1) the class is so "nu-merous" that joinder of all members individually is impracticable; (2) there are questions of law or fact "common" to the class; (3) the claims or defenses of the class representatives are "typical" of the claims or defenses of the class; and (4) the person representing the class is able to fairly and "adequately" protect the interests of all class members. Fed.R.Civ.P. 23(a); Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir.2003); accord United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir.2010) (identifying the four requirements of Rule 23(a) as "numerosity," "commonality," "typicality," and "adequacy"). Second, under Rule 23(b)(3), Plaintiffs must show that common questions of law or fact predominate, and class resolution is superior to other available methods of resolution. Fed.R.Civ.P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." Wal–Mart Stores, Inc. v. Dukes, —— U.S. ——, 131 S.Ct. 2541, 2550, 2551, 180 L.Ed.2d 374 (2011). A party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are in fact sufficiently numerous parties and common questions of law or fact. Id.

"The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's causes of action." Wal–Mart, 131 S.Ct. at 2551–52 (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). But, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Amgen, Inc. v. Conn. Ret. Plans & Trust Funds, —— U.S. ——, 133 S.Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013). Accordingly, any merits consideration must be limited to those issues necessary to deciding class certification. See id. at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010).

## III. ANALYSIS

### A. Requirements of Rule 23(a)

#### 1. Numerosity

■ A class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Defendants do not dispute that the proposed class satisfies the numerosity requirement. Opp'n at 9 n. 11. In addition, the Court finds that the proposed class, numbering in the hundreds, satisfies the numerosity requirement, which is presumptively satisfied when there are at least forty members. *See Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 456 (C.D.Cal.2012). Therefore, the Court finds that Rule 23(a)(1) is satisfied.

#### 2. Commonality

##### a. Legal Basis of the California Class and Subclasses' Claims

In order to determine whether there are common questions of law or fact, the Court first reviews the law regarding the California Class and Subclasses' claims. *See Wal–Mart*, 131 S.Ct. at 2551 ("[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n. 15 (9th Cir.2009) ("The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis.").

Generally, California requires employers to pay overtime premiums, provide meal and rest periods (or meal and rest premiums), and provide accurate itemized wage statements. *See* Cal. Lab.Code §§ 510, 512, 226.7, 226. The California Class and the Subclasses assert three claims under the California Labor Code, SAC ¶¶ 61–74, and several derivative claims, *id.* ¶¶ 75–95. Plaintiffs have shown, and LandSafe does not seem to dispute, that members of the Califor-

nia Class regularly work overtime without receiving premium pay or meal and rest periods. *See, e.g.,* Res. Appr. Decl. ¶ 16.

The parties agree that "this case will largely focus on the professional and administrative exemptions contained in Wage Order 4–2001, Section 1(A)(2) and (3) (codified at Cal.Code Regs., tit. 8, § 11040)." *See* Opp'n at 10; Mot. at 10.

Employees fall within the administrative exemption if, among other factors, (1) the employee's duties involve "performance of office or non-manual work directly related to management policies or general business operations," (2) the employee "customarily and regularly exercises discretion and independent judgment," (3) the employee "performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge," and (4) the employee is paid a monthly salary not less than double the minimum wage. 8 Cal. Code Regs., tit. 8, § 11040(1)(A)(2).

Employees fall within the professional exemption if, among other factors, (1) the employee is "primarily engaged in an occupation commonly recognized as a learned or artistic profession," (2) the employee "customarily and regularly exercises discretion and independent judgment," and (3) the employee is paid a monthly salary no less than double the minimum wage. *Id.* § 11040(1)(A)(3).

#### b. Common Question

■ Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class," but "even a single common question will do." *See Wal–Mart*, 131 S.Ct. at 2551, 2556 (citations and quotations omitted); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011). Certification is appropriate where the legality of a particular policy presents a "significant question of law" that is "apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc.*, 731 F.3d 952, 963 (9th Cir. 2013) (citing *Wal–Mart*, 131 S.Ct. at 2551).

The Court notes, however, that there appears to be some question as to whether the factual inquiries attending misclassification claims are problems of commonality under

Rule 23(a) or predominance under Rule 23(b). *Compare, e.g., Fjeld v. Penske Logistics, LLC,* No. CV 12–3500, 2013 U.S. Dist. LEXIS 116485 (C.D.Cal. Aug. 9, 2013) (analyzing commonality), *with, e.g., Delagarza v. Tesoro Ref. & Mktg. Co.,* No. C–09–5803, 2011 U.S. Dist. LEXIS 101127 (N.D.Cal. Sept. 8, 2011) (analyzing predominance). The Court notes that, ordinarily, these factual inquiries raise potential problems of predominance, not commonality. *See Marlo v. UPS, Inc.,* 639 F.3d 942 (9th Cir.2011) (addressing predominance); *In re Wells Fargo Home Mortg.,* 571 F.3d 953 (9th Cir.2009) (same); *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 946 (9th Cir.2009) (same); *see also Wal–Mart,* 131 S.Ct. at 2556–57 (noting the important distinction between Rule 23(a)(2) and Rule 23(b)(3)).

█ Here, there are several common questions, which the Court will discuss in greater detail when it analyzes whether those common questions predominate. *Supra* III. B.1. For the purposes of Rule 23(a), it enough that this action raises the common question, for example, of whether the members of the California Class are "primarily engaged in an occupation commonly recognized as a learned ... profession" in light of the minimum standards for licensing, certification, and continuing education. *See* Cal. Code Regs., tit. 10, §§ 3500–44; Cal.Code Regs., tit. 10, §§ 3661–69; Nicholson Decl. ¶ 13. Therefore, the Court finds that Rule 23(a)(2) is satisfied. *See Wal–Mart,* 131 S.Ct. at 2556 (noting that "even a single common question will do").

### 3. Typicality

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Courts assess typicality by determining whether the class representatives and the rest of the putative class have similar injuries and conduct. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). LandSafe does not challenge the typicality of the claims and defenses of the Proposed Class Representatives. *See generally* Opp'n.

In any case, the Court finds that the claims and defenses of the Proposed Class Representatives—Terry P. Boyd, Ethel Joann Parks, Sonia Medina, and Linda Zanko—are typical, and Rule 23(a)(3) is satisfied.

### 4. Adequacy

Class representatives must be able to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[?]· and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th ·Cir.1998); *see also Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492, 535 (N.D.Cal.2012) (holding that plaintiffs are adequate if they do not have conflicts of interest and are represented by competent counsel).

#### a. Sonia Medina

LandSafe does not dispute that Sonia Medina, one of the Proposed Class Representatives, is adequate. *See generally* Opp'n.

#### b. Terry Boyd

LandSafe argues that Terry Boyd is inadequate because he acted unethically prior to being terminated and because he had previously filed a claim with the California Labor Commissioner.

█ First, Mr. Boyd's allegedly unethical behavior does not render him inadequate. Some courts have found that "[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *See, e.g., Hovel v. Boiron, Inc.,* No. 11–cv–10803, 2014 U.S. Dist. LEXIS 35908, at *7 (C.D.Cal. Feb. 27, 2014) (citing *Harris v. Vector Marketing Corp.,* 753 F.Supp.2d 996, 1015 (N.D.Cal. 2010)). However, those cases are inapposite because they involved inconsistent depositional testimony regarding the cases themselves; whereas, here, LandSafe's allegations are essentially that Mr. Boyd was not a good and honest employee. This does not make

him inadequate for the purposes of class certification.

Second, the fact that Mr. Boyd filed a claim with the Labor Commissioner does not render him inadequate. Based on LandSafe's showing, Mr. Boyd filed such a claim, but it is not clear that there was a final judgment on the merits. Therefore, it is not even clear that Mr. Boyd is precluded from bringing the claims in the present action. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("[A] final judgment on the merits bars further claims by parties or their privies based on the same cause of action."). Furthermore, the fact that LandSafe may have a good defense to Mr. Boyd's claim does not render Mr. Boyd inadequate. *See Perez v. State Farm Mut. Auto. Ins., Co.,* 2011 U.S. Dist. LEXIS 155921 (N.D.Cal. Dec. 7, 2011).

Therefore, the Court finds that Mr. Boyd is an adequate class representative.

### c. Ethel Parks

■ LandSafe next argues that Ethel Parks is an inadequate class representative because she filed a voluntary Chapter 7 bankruptcy petition without disclosing her interests in this lawsuit. Opp'n at 19.

■ Courts have self-imposed a number of prudential limitations to standing, including "the general prohibition on a litigant's raising another person's legal rights[.]" *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (emphasis added); *accord Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A debtor seeking bankruptcy relief has a duty to carefully schedule her assets on her bankruptcy petition. *Cusano v. Klein,* 264 F.3d 936, 945–46 (9th Cir.2001). Assets that a debtor fails to schedule are part of the bankruptcy estate. 11 U.S.C. § 544(c), (d); *accord Dunmore v. United States,* 358 F.3d 1107, 1112 (9th Cir.2004). The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including the debtor's "causes of action." 11 U.S.C. § 521(1); *accord Smith v. Arthur Andersen LLP,* 421 U.S. 989, 1002 (9th Cir.2005) (citing *United States v. Whiting Pools, Inc.,* 462

U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)); *Turner v. Cook,* 362 F.3d 1219, 1226 (9th Cir.2004). In other words, if the debtor fails to schedule a cause of action on her bankruptcy petition, she is divested of standing to assert that cause of action. *See Dunmore,* 358 F.3d at 1112.

There is a serious question, which largely turns on a finding of fact, as to whether Ms. Parks has prudential standing. However, the Court will not, on that basis alone, declare her inadequate. As other courts have explained, there is "no authority for the proposition that an affirmative defense, which may affect some members of the class, creates a conflict that otherwise defeats the adequacy of a proposed class representative." *Barnes v. AT & T Pension Benefit Plan,* 270 F.R.D. 488, 495 (N.D.Cal.2010) (quoting *Contos v. Wells Fargo Escrow Co.,* No. 08–0838, 2010 U.S. Dist. LEXIS 77225, at *5 (W.D.Wash. July 1, 2010)).

Therefore, the Court finds that Ethel Parks is adequate.

### d. Linda Zanko

■ Finally, LandSafe argues that Linda Zanko is inadequate because she suffers from health issues that might prevent her from vigorously prosecuting the action. Opp'n at 19.

Ms. Zanko's temporary health issues do not render her inadequate. Other than mere speculation, LandSafe rests entirely on the fact that Ms. Zanko was unavailable for a deposition when LandSafe elected to notice the deposition for around the time that Ms. Zanko underwent surgery. *See* Mandel Decl. ¶¶ 3–5. She has responded to written discovery and participated in mediation. *See* Second Schwartz Decl. ¶ 16. Therefore, the Court finds that Ms. Zanko is able to "prosecute the action vigorously on behalf of the class," and she is adequate. *See Hanlon,* 150 F.3d at 1020 (9th Cir.1998).

## B. Requirements of Rule 23(b)(3)

### 1. Predominance

"Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend,* ── U.S. ──,

133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013). Rule 23(b) requires that courts "take a 'close look' at whether common questions predominate over individual ones." *Id.*

The Court is mindful that the predominance analysis begins with the elements of the underlying causes of action. *See Erica P. John Fund, Inc. v. Halliburton Co.,* —— U.S. ——, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011); *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1067 (9th Cir.2014). However, both parties agree that "this case will largely focus on the professional and administrative exemptions contained in Wage Order 4–2001, Section 1(A)(2) and (3) (codified at Cal.Code Regs., tit. 8, § 11040)." *See* Opp'n at 10; Mot. at 10. The Court will briefly address the common and individual questions raised by the six causes of action asserted by the California Class and the Subclasses, and then move on to the common and individual questions raised by the exemption analyses.

### a. Failure to Pay Overtime Compensation in Violation of California Law

■ The California Class asserts that LandSafe failed to pay overtime compensation in violation of California Labor Code section 510. SAC ¶¶ 61–64. California Labor Code section 510 provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.

Cal. Lab.Code § 510.

LandSafe does not seem to dispute that members of the California Class were not paid overtime compensation and did, at least to some extent, work overtime. Undoubtedly, there will be individual inquiries into the precise amount of overtime that each employee worked. However, such damages determinations "are individual in nearly all wage-and-hour class actions." *Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 513 (9th

Cir.2013) (discussing *Brinker Rest. Corp. v. Sup. Ct.,* 53 Cal.4th 1004, 1018, 139 Cal. Rptr.3d 315, 273 P.3d 513 (2012)). The necessity of such individual inquiries does not, by itself, end the predominance analysis. *See id.* at 513–14 (citing *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975) and *Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1089 (9th Cir.2010)). Without yet considering the exemptions, common questions—such as, did LandSafe have a policy or practice of not paying overtime to members of the California Class?—predominate over individual questions.

### b. Failure to Provide Accurate Itemized Wage Statements

■ The California Itemized Wage Statement Subclass asserts that LandSafe failed to provide accurate itemized wage statements, in violation of California Labor Code section 226(a). SAC ¶¶ 65–67. California Labor Code section 226(a) provides:

> Every employer shall ... furnish each of her employees ... an accurate itemized statement in writing showing ... all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Cal. Lab.Code § 226(a). LandSafe contends that the "injury" requirement contained in section 226(e) raises a variety of individual questions. However, its cited cases predate a 2013 amendment to section 226(e). *See* Opp'n at 22–23 (citing cases from 2009). That section now provides:

> An employee is deemed to suffer injury ... if the employer fails to provide accurate and complete information as required ... and the employee cannot promptly and easily determine from the wage statement alone .... [t]he amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement[.]

Cal. Lab.Code 226(e). In light of this amendment, the injury requirement does not present a high hurdle for class certification. *See McKenzie v. Fed. Express Corp.,* 275 F.R.D. 290, 299–300 (C.D.Cal.2011). As many courts have explained, "the injury re-

quirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute." *See, e.g., Holak v. Kmart Corp.,* No. 12–cv–00304, 2014 U.S. Dist. LEXIS 78472, at *71–72 (E.D.Cal. June 6, 2014); *Seckler v. Kindred Healthcare Operating Grp., Inc.,* CV 10–1188, 2013 U.S. Dist. LEXIS 29940, at *12 (C.D.Cal. Mar. 5, 2013). This Court agrees with the courts that have found that, as amended, the injury requirement for a section 226 claim requires only a showing that an employee could not "promptly and easily determine from the wage statement alone" the amount of gross or net payments made during a pay period. *See* Cal. Lab.Code § 226(e).

The majority of this claim will center on common questions, such as: did LandSafe furnish its employees with a written itemized wage statement? If so, was it possible to promptly and easily determine the payments based on the wage statement alone? Without yet considering the exemptions, the Court finds that the subclass's section 226 claim will raise predominantly common questions.

### c. Failure to Provide Rest Breaks and Meal Periods

 The California Class next asserts that LandSafe failed to pay provide rest breaks and meal periods, in violation of California Labor Code section 512. SAC ¶¶ 68–74. California Labor Code section 512 provides:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab.Code § 512(a).

LandSafe argues that because many members of the California Class worked from home and were not prevented from taking meal or rest breaks, individual questions predominate. Opp'n at 21–22 (citing *Brinker Rest. Corp. v. Sup. Ct.,* 53 Cal.4th 1004, 1017, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012)). However, this argument is predicated on an imprecise statement of California law. LandSafe suggests that employers have only the negative duty to refrain from requiring an employee to work during a meal or rest period. *See* Opp'n at 21–22. In *Brinker,* however, the California Supreme Court held that, "an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done." 53 Cal.4th at 1017, 139 Cal.Rptr.3d 315, 273 P.3d 513.

After *Brinker,* common questions will often predominate with regard to meal and rest break claims. These common questions include: did the employer have a policy or practice to "relieve[ ] its employees of all duty?" *See id.* at 1040, 139 Cal.Rptr.3d 315, 273 P.3d 513. Did the employer have a policy or practice to "relinquish[ ] control over [employee] activities?" *See id.* Did the employer have a policy or practice to "permit [employees] a reasonable opportunity to take an uninterrupted 30–minute break?" *See id.* A negative answer to any of these questions would mean that the employer failed to meet its affirmative obligation to provide—but not police—meal periods and rest breaks. *See id.* at 1017, 139 Cal.Rptr.3d 315, 273 P.3d 513. Here, even if the Court accepts LandSafe's assertions that Residential Appraisers, who worked from home, had time to take breaks and LandSafe never prevented them from taking those breaks, the threshold common question remains: did LandSafe *relieve* its employees of all duty so that they could take their meal periods and rest breaks?

■ Furthermore, employers do not escape liability simply by having a formal policy of providing meal and rest breaks. *Id.* at 1040, 139 Cal.Rptr.3d 315, 273 P.3d 513 (citing *Cicairos v. Summit Logistics, Inc.,* 133 Cal.App.4th 949, 962–63, 35 Cal.Rptr.3d 243 (2005)) ("[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks."). Therefore, here, there is an additional common question of whether LandSafe's compensation system "pressur[ed] employees to perform their duties in ways that omit breaks." *See id.*

Without yet considering the exemptions, the Court finds that the California Class's section 512 claim will raise predominantly common questions.

#### d. Other Claims

The California Class and the Subclasses assert three other claims: unfair business practices under the Unfair Competition Law, California Business and Professions Code section 17200; late pay and waiting time penalties under California Labor Code sections 201, 202, and 203; and civil penalties under the Private Attorneys General Act. SAC §§ 75–96. These claims are derivative of the three claims discussed in further detail above. Furthermore, LandSafe raises no arguments unique to any of these three claims. *See generally* Opp'n.

To the extent that there are unique issues, the Court finds that those raise mostly common questions. For example, late pay and waiting time penalties are appropriate if the defendants acted willfully. *See* Cal. Lab. Code §§ 201–203. As the Court will discuss in greater detail in its discussion on employment exemptions, there is significant evidence that LandSafe implemented standardized compensation policies. *See* 30(b)(6) Dep. 128:2–13, 347:13–16, 129:9–23. Therefore, questions such as willfulness will likely rise and fall based on common evidence, and the Court finds that with regard to the three derivative claims, common questions predominate over individual questions.

#### e. Employment Exemptions

■ In the context of employment exemptions, individual inquiries are necessary because the "crucial touchstone" is the "employee's actual job duties and responsibilities." *Campbell v. PricewaterhouseCoopers, LLP,* 642 F.3d 820, 830 (9th Cir.2011). But, "uniform corporate policies will often bear heavily on questions of predominance and superiority. Indeed, courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes." *Wells Fargo Home Mortg.,* 571 F.3d at 958–59 (citing *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 160 (S.D.N.Y.2008)). "Such centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof." *Id.*

■ It is, however, improper for a court to certify a class based solely on the existence of a uniform exemption policy, *id.,* or solely on an employer's expectations that an employee will perform certain tasks and follow certain procedures, *Marlo,* 639 F.3d at 948. Rather, courts should look to "whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof." *Vinole,* 571 F.3d at 946 (approving the approach of multiple district courts).

■ The conduct of Residential Appraisers is regulated by several corporate policies and procedures. First, the job descriptions of Residential Appraisers are "standardized nationwide." 30(b)(6) Dep. 46:16–20. Second, all Residential Appraisers receive their assignments through the same computer program, Appraisal Port, and they may not "pick and choose" those assignments. *Id.* 50:4–11; 276:1–24. Third, LandSafe has standardized compensation policies that apply to all Residential Appraisers. 30(b)(6) Dep. 128:2–13, 347:13–16, 129:9–23. Fourth, and most significantly, LandSafe promulgated several detailed guidelines to direct the conduct of Residential Appraisers. *See, e.g.,* Schwartz Decl. ¶¶ 3–8 & G (Bank of America "Property and Appraisals" guidelines); Ex. E (LandSafe "Scope of Work" for Form

1004); Ex. C (Fannie Mae "Uniform Appraisal Dataset" Guidelines); Ex. B (LandSafe "Unacceptable Appraisal Practices No. 7" in selection of Comparables); Ex. D (LandSafe "Appraisal Reporting Requirements Update"). For example, one 50–page guideline details different sets of procedures for different types of properties (e.g. condominiums, cooperatives, leasehold estates, manufactured homes, modular homes, mixed-use homes, rural homes), and specifies requirements such as the angles from which photographs of the property should be taken. *See id.* Ex. G. LandSafe's 30(b)(6) deponent testified that these policies are uniform nationwide and are "not an optional thing." 30(b)(6) Dep. 339:2–340:9; 281:14–19; 339:9–15, 281:14–19, 274:1–8, 355:11–18, 333:13–334:25, 309:17–23.

In addition to the highly standardized corporate policies and procedures, the conduct of Residential Appraisers is regulated by state and federal law. For example, California state law mandates that all appraisers comply with the Uniform Standards of Professional Appraisal Practice. *See* Cal.Code Regs., tit. 10, Article 11, § 3701 et seq.; Def.'s Request for Judicial Notice ("Def.'s RJN") Ex. A, p. U–1. Residential Appraisers must also meet minimum requirements for licensure, certification, and continuing coursework. Cal.Code Regs., tit. 10, §§ 3500–44; Cal.Code Regs., tit. 10, §§ 3661–69; Nicholson Decl. ¶ 13.

Indeed, many of LandSafe's arguments counsel in favor of class certification.[5] For example, it explains that its "internal guidelines confirm the [Uniform Standards of Professional Appraisal Practice] requirements that appraisers must conduct the research, analysis, and comparisons necessary to determine an accurate opinion of market value." *See* Opp'n at 16–17. If the Court accepts LandSafe's assertion—that internal guidelines and the Uniform Standards of Professional Appraisal Practice mandate certain conduct—then such a fact militates in

favor of certification. As another example, LandSafe's 30(b)(6) deponent declares: "The primary duty of Residential Appraisers is to gather information about residential properties and the market conditions for those properties and then, using their independent judgment and discretion, analyze that information to formulate an opinion of the property's value." Nicholson Decl. ¶ 15. Again, if the Court accepts LandSafe's assertion—that the primary duty of Residential Appraisers is uniformly characterized by independent judgment and discretion—then such a fact would weigh in favor of certification. It is true that such policies suggest that LandSafe might prevail on the merits, but such an inquiry is premature. *See Amgen,* 133 S.Ct. at 1194–95 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Rather, these types of "standardized corporate policies and procedures governing employees" are evidence that class treatment is appropriate. *See Vinole,* 571 F.3d at 946.

In sum, Plaintiffs have presented numerous common policies and procedures, which raise a great number of common questions. Several individual inquiries still remain, such as whether any employee significantly deviated from the requirements set out by corporate guidelines and state law. *See Marlo,* 639 F.3d at 948 (holding that the fact that an employer expects an employee "to follow certain procedures or perform certain tasks" does not establish that they did). Nevertheless, after a "close look," the Court finds that "common questions predominate over individual ones." *See Comcast,* 133 S.Ct. at 1432.

### 2. Superiority

■ Class certification is appropriate only if class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). LandSafe argues that the proposed class is unmanageable and the high values of

---

5. The Court agrees with LandSafe that Residential Appraisers are not rendered "mere automatons" because some regulations, policies, and procedures that govern their behavior. *See* Opp'n at 15–16 (citing *United Postal Serv. Wage and Hour Cases,* 190 Cal.App.4th 1001, 1026, 118 Cal.Rptr.3d 834 (2010)). But, such a question dives into the merits of the LandSafe's defense and is, therefore, premature. *See Amgen,* 133 S.Ct. at 1194–95 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

the claims make individual actions preferable.

First, the proposed class is manageable. The Court recognizes that there will be some need for individual inquiries, but "courts in overtime cases such as this may properly couple uniform findings on common issues regarding the proper classification of the position at issue with innovative procedural tools that can efficiently resolve individual questions regarding eligibility and damages." *See Tierno v. Rite Aid Corp.*, No. C 05–02520, 2006 U.S. Dist. LEXIS 71794, at *35 (N.D.Cal. Aug. 31, 2006) (citing *Sav–On Drug Stores, Inc. v. Sup. Ct.*, 34 Cal.4th 319, 332, 17 Cal.Rptr.3d 906, 96 P.3d 194 (2004)). For example, courts can employ "administrative mini-proceedings, special master hearings, and specially fashioned formulas or surveys." *Id.* The availability of these tools, coupled with the predominance of common questions, demonstrates that this class is manageable, and will "achieve economies of time, effort, and expense ... without sacrificing procedural fairness or bringing about other undesirable results." *See Amchem Prods. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Fed.R.Civ.P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment).

Second, the potentially high value of the claims does not weigh against class certification. In *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–91 (9th Cir.2001), the Ninth Circuit explained that "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." LandSafe artfully amends this quote to state: "Where damages suffered by each putative class member are [ ] large, this factor weighs [against] certifying a class action." Opp'n at 25 (brackets in original). LandSafe's reading does not follow from the language of *Zinser*. *But see Ngyuen v. BDO Seidman, LLP*, 2009 U.S. Dist. LEXIS 97524, at *28 (C.D.Cal. July 6, 2009). As a simple matter of logic, the correct reading of *Zinser* is that, "[w]here damages suffered by each putative class member are [ ] large, this factor [does not] weigh[ ] in favor of certifying a class action." *See* 253 F.3d at 1190–91. In other words, the fact that the claims are high value simply means that the value of the claims does not weigh *in favor* of certifying the class; it does not necessarily mean that the value of the claims weighs *against* certifying the class. Indeed, in *Zinser*, the Ninth Circuit confirmed this reading of the rule, holding only that a claim minimally worth $50,000 did "not argue persuasively *for* class certification." *Id.* at 1191 (emphasis added). Accordingly, the Court finds that a class action is a superior vehicle for resolving the claims asserted.

In sum, the Court finds that Plaintiffs have met the burden of demonstrating that the California Class and the Subclasses satisfy the requirements of Rule 23(a) and 23(b)(3). Therefore, the Court GRANTS the Motion for Class Certification.

## IV. DISPOSITION

For the reasons explained above, the Court ORDERS the following:

- The California Class, the California Waiting Time Penalties Subclass, and the California Itemized Wage State and PAGA Penalties Subclass are CERTIFIED.
- Terry Boyd, Sonia Medina, Ethel Parks, and Linda Zanko are APPOINTED Class Representatives.
- (1) Bryan Schwartz Law and (2) Schonbrun Desimone Seplow Harris & Hoffman, LLP are APPOINTED as Class Counsel.